**Sherwood J. SHEETS**

v.

**ESTATE of John H. SHEETS.**

Supreme Judicial Court of Maine.

Oct. 10, 1975.

Clark & Jones, P. A. by Dennis L. Jones, Gardiner, for plaintiff.

John P. Carey, Bath, Farris & Foley, P. A. by Ralph W. Farris, Jr., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

This is an appeal from a decision of the Supreme Court of Probate rendered on an appeal from a decision of the Sagadahoc County Judge of Probate. 4 M.R.S.A. § 401.

John H. Sheets died November 17, 1972, leaving as his only heirs-at-law and next of kin his three sons, Paul H., Guy T., and Sherwood J. Sheets. On November 21, 1972, a document purporting to be the will of the decedent dated August 29, 1972, was presented for allowance by one Doris M. Farrell, the executrix therein named. This document made a specific bequest to Paul H. and Guy T. Sheets, with the residue of the estate devised to the decedent's sister-in-law, Doris M. Farrell, and her husband, Arthur E. Farrell. The provision therein for the third son was as follows:

> "I am intentionally omitting my son, Sherwood J. Sheets from this my last will and testament for the reason that I have made more provision for him during my lifetime than I did for my other two sons."

This document was allowed by the Probate Court on June 5, 1973. In the decree the Court simultaneously dismissed a petition for probate of a prior will executed November 2, 1971, under the terms of which the decedent devised his entire estate in equal shares to his three sons and named Ralph M. Clark, testator's long time attorney, as executor.

Sherwood J. Sheets seasonably appealed to the Supreme Court of Probate, arguing

that the proponent of the will had failed to prove the testamentary capacity of John H. Sheets, or, alternatively, if such capacity existed, the will was the product of undue influence exerted by Doris and Arthur Farrell upon the testator. The Justice below decreed that testamentary capacity existed, but he reversed the decree of the Probate Court and disallowed the will on the basis of undue influence. From this decision Doris M. Farrell and Arthur Farrell have appealed.

We deny the appeal.

The appellants contend the finding and decree of the Justice below was erroneous because there was neither evidence produced nor language in the will supporting appellee's contention that the execution of the 1972 will was procured by undue influence.

The appellee contends that Arthur Farrell and Doris M. Farrell used their position as individuals caring for the testator to alienate him from his friends and family, and then to influence the execution of his will so that they would be the beneficiaries of the largest portion of his estate.

█ Our appellate review is governed by the well established principle of law that findings of fact of a Justice sitting in the Supreme Court of Probate are conclusive unless clearly erroneous. *In Re Leonard*, 321 A.2d 486, 489 (Me.1974); *Fitanides v. Stickney*, 161 Me. 343, 212 A.2d 209 (1965); *Barton v. Beck Estate*, 159 Me. 446, 195 A.2d 63 (1963); *Casco Bk. & Tr. Co. and Tomuschat, Appellants*, 156 Me. 508, 167 A.2d 571 (1960); M.R.C.P., Rule 52(a).

█ In determining whether there were facts supportive of the legal conclusion that the 1972 will was the product of undue influence we look again to settled precedent.

"By undue influence in this class of cases is meant influence in connection with the execution of the will and operating at the time the will is made, amounting to moral coercion, destroying free agency, or importunity which could not be resisted, so that the testator, unable to withstand the influence, or too weak to resist it, was constrained to do that which was not his actual will but against it."

*Rogers, Appellant*, 123 Me. 459, 461, 123 A. 634, 636 (1924); *Fitanides v. Stickney, supra; Thibault v. Fortin's Estate*, 152 Me. 59, 122 A.2d 545 (1956).

"As has been often reiterated, the burden of proof is on the party alleging undue influence. The true test is the effect on the testator's volition. It must be sufficient to overcome free agency, so that what is done is not according to the wish and judgment of the testator."

*In Re Will of Ruth Cox*, 139 Me. 261, 272, 29 A.2d 281, 286 (1942); *Thibault v. Fortin's Estate, supra; Casco Bk. & Tr. Co. and Tomuschat, Appellants, supra.*

Since this appeal raises no unresolved legal issues and is essentially an attack on the factual findings of the Justice below, we have reviewed the record to determine if the conclusion reached is thereby supported.

The Justice below made specific findings of fact to underlie his legal conclusions. We now quote excerpts from his findings.

"It is necessary for the Court to review the facts surrounding the relationship between the Farrells [appellants] and Mr. Sheets [testator] and the making of the new 'will.'

If the Farrells ministered any aid to Mr. Sheets prior to his entry into the hospital following his fourth stroke on July 2, 1972, this fact was unknown to Dr. Gould [testator's family physician], Sherwood Sheets, or Lloyd Hickey,[1]

1. Mr. Hickey had been testator's close friend over a period of many years and had been given his power of attorney on July 6, 1972, which was revoked within a few weeks thereafter.

Mr. Sheets' neighbor of thirty-four years. Following Mr. Sheets release from the hospital he became totally under the care of Mrs. Farrell who received payments of $75–$100 per week for her services. At this time the Farrell family was living with Mr. Sheets and they were still doing so at the time Mr. Sheets drafted his new 'will.'

The short association of the Farrells and Mr. John Sheets, Mrs. Farrell's sharp antagonism toward Sherwood Sheets, Lloyd Hickey and Mrs. Pelletier, Sherwood's sister-in-law, her [Mrs. Farrell's] strong influence on the testator in his weakened condition, the strange circumstances surrounding the making of the August will, and the inequitable and unnatural terms of that document raise implications that undue influence was exerted on the testator at the time of the making of the will.

.    .    .    .    .    .

.    .    .    Using the four (4) element test,[2] the Court finds that Mr. Sheets was susceptible to outside influence, that Mrs. Farrell had the opportunity to exercise undue influence and affect the testator's volition, that Mrs. Farrell had the disposition to exert undue influence, and that the August 29, 1972 will shows the result of this influence.

From the time Mr. Sheets returned from the hospital in July 1972 accompanied by the Farrells, they continually sought to alienate Mr. Sheets from his family and old friends. Mrs. Farrell accused Mr. Hickey of mismanaging Mr. Sheets' money and was instrumental in getting Mr. Hickey's power of attorney revoked. When Mr. Sheets told his old attorney .    .    . that he trusted Mr. Hickey and wished to continue the power of attorney, Mrs. Farrell contacted a new lawyer .    .    . for the purpose of revoking it. Following the revocation of the power of attorney Mr. Sheets entered his bank, distraught because he feared his money was not there, only to find that everything was in order. The Farrells worked actively to prevent any possible reconciliation between Mr. Sheets and his son Sherwood, who prior to a February 1972 disagreement had been close to his father despite occasional family disputes. The Farrells succeeded in exciting Mr. Sheets' fears and suspicions while isolating him from the counsel and companionship of his old friends Mr. Hickey and Mrs. Pelletier by making them feel unwanted and unwelcome.

While under their sole care and supervision, unable to function without their assistance, Mr. Sheets changed his last will and testament in a manner strikingly different from his former wishes that his three children be treated equally. It is, therefore, reasonable for the Court to infer from the circumstances that Mr. Sheets executed his August 29 will while under the undue influence of the Farrells. Since this document was not an expression of the free will of John Sheets, it should be set aside."

These findings are not only free of error but are completely supported by the record.

The entry is:

Appeal denied.

Judgment of the Supreme Court of Probate affirmed.[3]

All Justices concurring.

2. Referring to *Casco Bk. & Tr. Co. and Tomuschat, Applts.*, 156 Me. 508, 167 A.2d 571 (1960), which incorporated the test described in *Hoffman v. Hoffman*, 192 Mass. 416, 78 N.E. 492, 493 (1906).

3. "It is ORDERED, ADJUDGED, and DECREED that the decree of the Probate Court dated June 5, 1973 allowing said 'will,' dated August 29, 1972, is hereby reversed and said 'will' is disallowed on the basis of undue influence and this matter is remitted to the Sagadahoc County Probate Court for such entry and further proceedings consistent with this order."